# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| HERNAN C. P., | Case No. 25-cv-4561 (LMP/ECW) |
| Petitioner, | |
| v. | **ORDER GRANTING HABEAS PETITION** |
| PAMELA BONDI, *Attorney General*; KRISTI NOEM, *Secretary, U.S. Department of Homeland Security*; DEPARTMENT OF HOMELAND SECURITY; TODD M. LYONS, *Acting Director of Immigration and Customs Enforcement*; IMMIGRATION AND CUSTOMS ENFORCEMENT; DAREN K. MARGOLIN, *Director for Executive Office for Immigration Review*; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; DAVID EASTERWOOD, *Acting Director, St. Paul Field Office, Immigration and Customs Enforcement*; and JOEL BROTT, *Sheriff of Sherburne County*, | |
| Respondents. | |

David L. Wilson and Olivia Anderson-Petroske, **Wilson Law Group, Minneapolis, MN**, for Petitioner.

Ana H. Voss and David W. Fuller, **United States Attorney's Office, Minneapolis, MN**, for Respondents.[1]

---

[1] Respondent Joel Brott has not appeared or otherwise participated in these proceedings. As used in this Order, "Respondents" and the "Government" do not refer to or include Brott.

Petitioner Hernan C. P. brings a petition for a writ of habeas corpus, ECF No. 1, and a motion for a temporary restraining order ("TRO"), ECF No. 4, alleging that he is being denied a bond hearing in violation of the Immigration and Nationality Act ("INA"). Hernan C. P. seeks various forms of relief, including his immediate release or, alternatively, an order requiring Respondents (the "Government") to provide him a bond hearing. ECF No. 1 at 24; *see* ECF No. 4 at 2. For the reasons below, the Court grants his habeas petition and orders the Government to provide him a bond hearing within seven days of the date of this Order.

## BACKGROUND

Hernan C. P. is a native and citizen of Ecuador who entered the United States without inspection in or around 1999. ECF No. 1 ¶¶ 28–29. Other than a single arrest in 2002 for providing false identification, he has no criminal history. ECF No. 14-1 at 2; ECF No. 1 ¶ 36. Hernan C. P. is married and has children who are United States citizens, one of whom is a member of the United States Marine Corps, whose service permitted Hernan C. P. to receive Military Parole in Place in September 2022. *Id.* ¶¶ 32–33; *see* ECF No. 15 ¶¶ 6–7; ECF No. 7-9. His parole status expired in September 2023. ECF No. 15 ¶ 7.

Hernan C. P. filed a Form I-485 Application to Register Permanent Residence or Adjust Status with United States Citizenship and Immigration Services ("USCIS") in or around October 2024, which remains pending. ECF No. 1 ¶¶ 33–34; ECF No. 15 ¶ 8; *see* ECF No. 7-2. Around the same time, one of Hernan C. P.'s children submitted a Form I-130 Petition for Alien Relative on Hernan C. P.'s behalf, ECF No. 15 ¶ 9, and Hernan C. P. submitted a Form I-765 Application for Employment Authorization, *id.* ¶ 10. Hernan

2

C. P.'s Form I-765 was approved by USCIS in February 2025, and his work authorization is valid until February 2030. *Id.* ¶ 11. USCIS sent an approval notice for his child's Form I-130 petition in August 2025. *Id.* ¶ 12.

On December 5, 2025, Hernan C. P. was encountered by United States Immigration and Customs Enforcement ("ICE") in Minneapolis, Minnesota. *Id.* ¶ 13; *see* ECF No. 1 ¶ 31. ICE determined that Hernan C. P. was in the United States unlawfully and arrested him. ECF No. 15 ¶ 13. Hernan C. P. was initially held in ICE custody at the Sherburne County Jail in Elk River, Minnesota, ECF No. 1 ¶ 41, but he has since been transferred to the Port Isabel Service Processing Center in Los Fresnos, Texas,[2] where he remains in ICE custody, ECF No. 15 ¶ 15. On December 13, 2025, ICE served a Notice to Appear on Hernan C. P. asserting that he is present in the United States unlawfully and that he is removable under the INA. ECF No. 14-2 at 1–2.

Hernan C. P. alleges that he is entitled to, but has been denied, a bond hearing under 8 U.S.C. § 1226(a), ECF No. 1 ¶¶ 2, 39, and that the mandatory detention provisions in 8 U.S.C. §§ 1225(b)(2) and 1226(c) are inapplicable to him, *id.* ¶¶ 40, 70. He brings

---

[2] Hernan C. P. filed his habeas petition while he was being held at the Sherburne County Jail. *See* ECF No. 1 ¶ 41. The Government represents that it was not aware of Hernan C. P.'s pending habeas petition when it transferred him to the Port Isabel Service Processing Center. ECF No. 15 ¶ 15. The Court nonetheless retains jurisdiction over Hernan C. P.'s petition because he names at least one "appropriate respondent with custody"—namely, ICE—that the Court "can order to effect [his] release should the writ issue." *Copley v. Keohane*, 150 F.3d 827, 830 (8th Cir. 1998) (citation omitted); *see Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.").

statutory claims under the INA and the Administrative Procedure Act and constitutional claims under the Fifth Amendment. *Id.* ¶¶ 75–97. Hernan C. P. seeks declaratory and injunctive relief including, primarily, an order requiring the Government to release him from custody immediately or, alternatively, requiring the Government to provide him a bond hearing in accordance with 8 U.S.C. § 1226(a).[3] *Id.* at 24. He also filed a motion for a TRO seeking the same relief. *See* ECF No. 4 at 2.

This Court, and hundreds of others, have considered the precise legal issue presented by Hernan C. P.'s petition. *See generally Roberto M. F. v. Olson*, No. 25-cv-4456 (LMP/ECW), 2025 WL 3524455 (D. Minn. Dec. 9, 2025). And this Court and nearly every other federal court to consider the issue have rejected the Government's argument and ordered the Government to provide bond hearings to noncitizens who were already present in the United States when they were detained by ICE, pursuant to Section 1226(a). *See id.* at *4. Given that this Court has already ruled on this precise question, the Court ordered the Government to respond to Hernan C. P.'s petition and specifically advised the Government that it would "not depart from its reasoning in *Roberto M. F.* absent a good-faith argument by the Government demonstrating that this case is factually or legally distinguishable." ECF No. 3 at 2–3.

---

[3]  Hernan C. P. also requested an order preventing the Government from attempting to move him from this District while his habeas petition is pending. ECF No. 1 at 24. Because Hernan C. P. has already been moved from this District to Texas, however, the Court can no longer grant that relief.

The Government timely responded to the Court's order, ECF No. 13, and Hernan C. P. replied, ECF No. 16. The Government represents that no hearing is needed in this matter, ECF No. 13 at 15, and Hernan C. P. did not request one. Accordingly, the Court will decide the petition on the papers.

## ANALYSIS

The Government concedes that "the issues in this case are largely similar to those in *Roberto M. F.*" and states that it "relies on its response" from that case. ECF No. 13 at 4. As already stated, the Court will not revisit its holding in *Roberto M. F.* and rejects the Government's argument to the extent it is duplicative of the Government's argument in *Roberto M. F.*

The Government does, however, raise a new argument that it did not present in *Robert M. F.*, arguing that Hernan C. P. is subject to the mandatory detention provisions in 8 U.S.C. § 1225(b)(2) because he is an "applicant seeking admission" to the United States by virtue of his pending Form I-485 application for adjustment of status based on his child's successful Form I-130 petition.[4] ECF No. 13 at 6. Before discussing the merits of the Government's argument, a brief overview of the detention provisions of Sections 1225 and 1226—and the Court's interpretation of those provisions—is in order.

---

[4] The Court notes that the same arguably could have been said in *Roberto M. F.* based on that petitioner's receipt of a bona fide determination on his U-visa application, which "entitled [him] to a work permit and 'deferred action' while he waits for a U visa to become available." *See Roberto M. F.*, 2025 WL 3524455, at *1. Nevertheless, the Government did not present this argument in *Roberto M. F.*, so the Court will address it here.

5

To be subject to mandatory detention under Section 1225(b)(2), a noncitizen must be "seeking admission" at the time of his arrest. *See Belsai D.S. v. Bondi*, No. 25-cv-3682 (KMM/EMB), 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025) ("One who is 'seeking admission' is presently attempting to gain admission."). The INA defines "admission" as "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). In the immigration context, the term "entry" has long been understood to mean the physical act of "coming from outside" into the United States. *United States ex rel. Claussen v. Day*, 279 U.S. 298, 401 (1929); *see Francisco T. v. Bondi*, 797 F. Supp. 3d 970, 975 (D. Minn. 2025). Accordingly, to be "seeking admission" for purposes of Section 1225, one must be presently seeking "entry"—that is, "coming from outside" into the United States. *Claussen*, 279 U.S. at 401. And such noncitizens "'*shall be* detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (alterations in original) (emphasis added) (quoting 8 U.S.C. § 1225(b)(2)(A)).

Section 1226, on the other hand, "applies to aliens already present in the United States." *Id.* at 303. Under Section 1226, if a noncitizen who is already present in the United States is arrested and detained for the purpose of effecting his removal, the Government "*may* continue to detain the arrested alien," 8 U.S.C. § 1226(a)(1) (emphasis added), but also "may release" the noncitizen "'on . . . bond' or 'conditional parole'" so long as the noncitizen does not "fall[] into one of several enumerated categories involving criminal offenses and terrorist activities," *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C.

6

§ 1226(a)(2)–(3)).  Detention under Section 1226(a) is therefore discretionary, not mandatory. *Id.* at 300 (citation omitted) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). As such, noncitizens detained under that statute are entitled to "receive bond hearings at the outset of detention." *Id.* at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

The Government argues that while Section 1225(b)(1) "applies to those 'arriving' in the United States and other more recent arrivals," Section 1225(b)(2) "is not so limited and applies instead to any 'other' noncitizen 'who is an applicant for admission,'" and that interpreting Section 1225(b)(2) narrowly as applying only to "applicants for admission who are 'arriving' at the border" would "render paragraph (b)(2) essentially redundant of (b)(1)." ECF No. 13 at 9–10 (citations omitted). The Government further contends that the Court's reading of this statutory scheme in *Roberto M. F.* puts it in "the very interesting position of having to show—in order for mandatory detention to apply—that [a] noncitizen went through enough legitimate channels trying to remain in this country to be considered what one might call a 'seeking applicant.'" *Id.* at 6 (emphasis omitted).

The Government's argument is not entirely without support; for example, in *Chen v. Almodovar*, No. 1:25-cv-8350-MKV, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025), the court concluded that a noncitizen who had applied for asylum was "seeking admission" because he had engaged in "some active desire or process toward admission." *Id.* at *6. *Chen* concluded as much because "seeking asylum is 'seeking admission,' within the meaning of the statute, since 'admission' is defined in terms of 'lawful' status, 8 U.S.C. § 1101(a)(13)(A), not physical presence on U.S. soil." *Id.*

7

This Court finds *Chen*'s analysis unpersuasive. As an initial matter, *Chen* ignores that the statutory definition of admission *does* encompass a physical component—"entry," *see* 8 U.S.C. § 1101(a)(13)—which has long been understood to connote a physical process of "coming from outside" the United States. *Claussen*, 279 U.S. at 401; *see Goorakani v. Lyons*, No. 25 Civ. 9456 (DEH), 2025 WL 3632896, at *9 (S.D.N.Y. Dec. 15, 2025) (noting that *Chen* ignored the word "entry" in the statutory definition of "admission" and rejecting its analysis). So, to be "seeking admission" under Section 1225(b)(2), a noncitizen must be seeking a lawful *physical* entry into the United States—something that Hernan C. P. plainly was not doing when he was arrested, given that he had already been in the United States for more than twenty-five years.

To be sure, an "applicant for admission" who is "seeking admission" will do so, naturally, through an "application for admission." *Candido v. Bondi*, No. 25-cv-867 (JLS), 2025 WL 3484932, at *2 (W.D.N.Y. Dec. 4, 2025) ("'[A]pplicant' and 'seeker' are, indeed, accepted synonyms."). But the INA explains that "application for admission" refers to "the application for admission into the United States and *not to the application for the issuance of an immigrant or nonimmigrant visa*." 8 U.S.C. § 1101(a)(4) (emphasis added). This definition supports this Court's and the majority of other courts' conclusion that "admission" under Section 1225(b)(1) means physical entry into the United States, not an application for legal status, and that Section 1226(a) applies to noncitizens who are already present in the United States at the time they are detained. *See Roberto M. F.*, 2025 WL 3524455, at *4; *see also, e.g.*, *Claussen*, 279 U.S. at 401; *Jennings*, 583 U.S. at 288–89; *Francisco T.*, 797 F. Supp. 3d at 975–76.

Though the Government contends this Court's reading of the statutes puts its immigration enforcement agencies in a difficult position, the Government's reading of these statutes clearly puts noncitizens who, admittedly, are unlawfully present in the United States but who nevertheless are properly attempting to obtain lawful status and establish lawful presence into a far more precarious position. Under the Government's reading, these noncitizens, like Hernan C. P., are forced to choose between maintaining their applications for lawful status (and thus becoming subject to mandatory detention with no opportunity for a bond hearing), or withdrawing their applications and agreeing to removal, regardless of the merits of any pending applications they may have (rendering any need for a bond hearing moot). Either way, no one receives a bond hearing. That cannot be right, especially where, as here, the noncitizen *has already received a positive determination regarding one of his pending applications*. *See* ECF No. 15 ¶ 12.

While the Government contends that the Court's reading of Section 1225 renders paragraph (b)(2) "redundant of" paragraph (b)(1), ECF No. 13 at 10, that simply is not the case. Instead, the Court's reading aligns with the overwhelming majority of federal courts, including the Supreme Court. *See Romero v. Hyde*, 795 F. Supp. 3d 271, 285 (D. Mass. 2025) (quoting *Jennings*, 583 U.S. at 288–89) ("[S]ection 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'"). And the Government overlooks entirely that its reading, besides being contrary to how the Supreme Court understands the interplay between Section 1225 and Section 1226, would render Section 1226 a nullity. That, too, cannot be right. *See Owner-Operator Ind. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d

857, 863 (8th Cir. 2011) (explaining that a court "must read all parts of [a] statute together and give full effect to each part") (citation omitted).

To be clear, the Court does not hold that Hernan C. P. is entitled to *bond*; it holds only that Hernan C. P. is entitled to a *bond hearing* under Section 1226(a). *See Jennings*, 583 U.S. at 306. But the Government may not ignore Section 1226(a), nor may it continue to deny Hernan C. P. a bond hearing under an interpretation of Section 1225(b)(2) that this Court has unequivocally rejected.

The only remaining question is the relief to which Hernan C. P. is entitled. He asks the Court to order his immediate release. ECF No. 1 at 24. The Court considered the same request in *Roberto M. F.* and concluded that such relief was not warranted because the petitioner had not established that his detention was unlawful per se, but that his detention was unlawful insofar as he had been denied a bond hearing. *See Roberto M. F.*, 2025 WL 3524455, at *5. The same is true here. Accordingly, the Court orders the Government to provide Hernan C. P. with a bond hearing in accordance with Section 1226(a) as set forth below.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter, **IT IS HEREBY ORDERED** that:

1. Hernan C. P.'s Petition for a Writ of Habeas Corpus (ECF No. 1) is **GRANTED**;

2. Within 7 days of the date of this Order, the Government shall provide Hernan C. P. with a bond hearing in accordance with 8 U.S.C. § 1226(a);

3. If the Government does not provide Hernan C. P. with a bond hearing as required by this Order, he must be immediately released from detention;

4. Within 8 days of the date of this Order, the Government shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Hernan C. P.'s release; and

5. Hernan C. P.'s Motion for a Temporary Restraining Order (ECF No. 4) is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 22, 2025                    *s/Laura M. Provinzino*
                                            Laura M. Provinzino
                                            United States District Judge